Cody Hoesly (OSB No. 052860)
choesly@larkinsvacura.com
LARKINS VACURA LLP
121 SW Morrison Street, Suite 700
Portland, Oregon  97204
Telephone:  (503) 222-4424
Facsimile:  (503) 827-7600

Eric B. Fastiff (admission *Pro Hac Vice* anticipated)
efastiff@lchb.com
Dean M. Harvey (admission *Pro Hac Vice* anticipated)
dharvey@lchb.com
Katherine C. Lubin (admission *Pro Hac Vice* anticipated)
klubin@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, California  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

*Attorneys for Plaintiff Jacobus Rentmeester*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **JACOBUS RENTMEESTER**, | Case No. 3:15-cv-00113 |
| Plaintiff, | |
| v. | **COMPLAINT FOR DIRECT, VICARIOUS, AND CONTRIBUTORY COPYRIGHT INFRINGEMENT, AND FOR VIOLATIONS OF THE DIGITAL MILLENNIUM COPYRIGHT ACT** |
| **NIKE, INC.**, an Oregon corporation, | |
| Defendant. | |
| | **DEMAND FOR JURY TRIAL** |

# TABLE OF CONTENTS

<strong>Page</strong>

GLOSSARY OF DEFINED TERMS ............................................................................................... ii

I.     INTRODUCTION ........................................................................................ 1

II.    JURISDICTION AND VENUE .................................................................. 4

III.   PARTIES ...................................................................................................... 4

IV.   FACTUAL ALLEGATIONS ....................................................................... 5

      A.     Mr. Rentmeester Created the Jordan Photo .................................... 5

      B.     Nike Obtained Access to the Jordan Photo...................................... 8

      C.     Nike Unlawfully Copied the Jordan Photo ...................................... 9

      D.     Nike Again Unlawfully Copied the Jordan Photo with the Jumpman Logo and other Infringing Works............................... 10

      E.     Nike Encouraged, Directed, and Profited from Others' Infringement of the Jordan Photo ............................................... 15

V.     FIRST CAUSE OF ACTION – COPYRIGHT INFRINGEMENT ..................... 17

VI.    SECOND CAUSE OF ACTION – VICARIOUS COPYRIGHT INFRINGEMENT................................................................................... 18

VII.   THIRD CAUSE OF ACTION – CONTRIBUTORY COPYRIGHT INFRINGEMENT................................................................................... 18

VIII.  FOURTH CAUSE OF ACTION – VIOLATIONS OF THE DIGITAL MILLENNIUM COPYRIGHT ACT.................................................... 19

IX.    PRAYER FOR RELIEF ..................................................................... 20

X.     DEMAND FOR JURY TRIAL ........................................................... 21

COMPLAINT

## <u>GLOSSARY OF DEFINED TERMS</u>

| | |
|---|---|
| Jordan Photo | The photograph of Michael Jordan that Plaintiff Jacobus ("Co") Rentmeester created in 1984 and originally published in a Summer 1984 Special Issue of *LIFE Magazine*. |
| Nike Copy | Defendant Nike, Inc.'s photograph of Michael Jordan that unlawfully reproduced original copyrighted elements of the Jordan Photo. |
| Jumpman Logo | Nike's unlawful copy of the Jordan Photo that Nike used extensively in association with its Brand Jordan products. |
| 1984 Jordan Photo Invoice | Mr. Rentmeester's August 22, 1984 invoice sent to Nike for limited use of two color transparencies of the Jordan Photo, attached as Exhibit A. |
| 1985 Jordan Photo Invoice | Mr. Rentmeester's March 27, 1985 invoice sent to Nike for limited use of the Nike Copy, attached as Exhibit B. |
| Infringing Works | Reproductions of the Jumpman Logo, such as in advertisements, marketing materials, product packaging, and the central visual element of a wide variety of Nike products (examples of which are attached as Exhibit C). |
| Independent Infringers | Independent distributors and licensees throughout the world that reproduced, prepared derivative works from, distributed, displayed, and sold Infringing Works. |

COMPLAINT

Plaintiff Jacobus ("Co") Rentmeester, for his Complaint against Defendant Nike, Inc., alleges:

## I.    INTRODUCTION

1.    This is a copyright infringement action brought by Plaintiff Co Rentmeester regarding Nike's direct, contributory, and vicarious infringement of Mr. Rentmeester's copyright in a photograph of Michael Jordan that Mr. Rentmeester created (the "Jordan Photo").

2.    Mr. Rentmeester created the Jordan Photo in 1984 at the campus of the University of North Carolina.  The Jordan Photo was first published in a Summer 1984 Special Issue of *LIFE Magazine*, as part of a photo essay by Mr. Rentmeester featuring athletes preparing to represent the United States in the 1984 Olympics:



3.    Other subjects of Mr. Rentmeester's photo essay included Carl Lewis (at pages 48-49), Greg Louganis (at pages 62-63), and Edwin Moses (at pages 64-65).  The 1984 Special

COMPLAINT

Issue of *LIFE Magazine* clearly and prominently explained Mr. Rentmeester's authorship of the photographs at the start of the photo essay (at page 48): "Photographer Co Rentmeester logged 30,000 miles to create this portfolio of those who represent our nation's best."  The same page states the following credit: "Photography: Co Rentmeester[.]"

4.      After *LIFE Magazine* published the Jordan Photo, Nike sought a copy.  Nike learned that Mr. Rentmeester was the creator and owner of the copyright in the Jordan Photo.  In August 1984, Nike's Peter Moore paid Mr. Rentmeester $150 for temporary use of two 35mm color transparencies of the Jordan Photo "for slide presentation only, no layouts or any other duplication."  (**Exhibit A**.)  This strict limit on Nike's use of the color transparencies prohibited Nike from reproducing the Nike Photo.

5.      However, Nike willfully exceeded the scope of the invoice.  Nike used the color transparencies of the Jordan Photo to produce a nearly identical photograph that unlawfully reproduced original copyrighted elements of the Jordan Photo (the "Nike Copy"):



6.      Nike reproduced the infringing Nike Copy, including on billboards, as part of Nike's advertising campaign for Air Jordan shoes.

- 2 -

COMPLAINT

7.      Mr. Rentmeester discovered the infringement and complained to Nike.  In March 1985, Nike's Peter Kolsky paid Mr. Rentmeester $15,000 for continued use of the Nike Copy in posters and billboards "for North America only" and for "2 years," "all other usage rights are reserved."  (**Exhibit B**.)

8.      Nike again willfully violated the terms of the limited license it obtained from Mr. Rentmeester, using the Nike Copy outside of posters or billboards, outside of North America, and well beyond the following two years.

9.      Nike's unlawful infringement of the Jordan Photo continues to the present, including the "Jumpman Logo" Nike uses extensively to market its Jordan products.  The following is a comparison of a similarly-stylized Jordan Photo with Nike's infringing Jumpman Logo.



10.      Mr. Rentmeester's Jordan Photo created a defining impression of Michael Jordan that was unlike anything that previously existed.  Nike's Jumpman Logo conveys only the elements and essence of the Jordan Photo.

COMPLAINT

11.     Nike has obtained billions of dollars in revenue through its direct, contributory, and vicarious infringement of Mr. Rentmeester's copyright.  The infringing Jumpman Logo has been an integral part of Nike's marketing strategy from its introduction in 1987 to the present, and it has helped establish Nike as one of the largest global sports apparel brands.

## II.     <u>JURISDICTION AND VENUE</u>

12.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338.

13.     Venue is appropriate in this District pursuant to 28 U.S.C. §§ 1391(a) and (b) and 28 U.S.C. § 1400(a).  Defendant's principal place of business is in this District and Defendant transacts business in the District.

14.     This action is properly assigned to the Portland Division as Defendant's principal place of business is in Beaverton, Oregon.

## III.    <u>PARTIES</u>

15.     Plaintiff Jacobus ("Co") Rentmeester is an internationally-renowned photographer residing in Westhampton Beach, New York.  Mr. Rentmeester specializes, in part, in photographing athletes.  Many of Mr. Rentmeester's photographs were published by Time Inc. and *LIFE Magazine* from 1964 to the present, first in *LIFE Magazine*'s printed pages, and then reproduced online and in several books.  For instance, Mr. Rentmeester's 1967 image of a tank commander, taken during the Vietnam War, was the first color photograph to receive the Word Press Photo of the Year award.

16.     Defendant Nike, Inc. is a corporation incorporated under the laws of the State of Oregon with its principal place of business in Beaverton, Oregon.  Nike manufactures and sells sporting equipment, apparel, and accessories throughout the United States and around the world, as well as online at www.nike.com.

- 4 -

COMPLAINT

## IV.    FACTUAL ALLEGATIONS

### A.    Mr. Rentmeester Created the Jordan Photo

17.    Mr. Rentmeester began his photography career at Time Inc. and *LIFE Magazine*, where he worked as a staff photographer from 1966 through 1972.  After 1972 (and until 2000), Mr. Rentmeester worked for *LIFE Magazine* on a contract and/or freelance basis, and retained copyright ownership of the photographs he created.

18.    Mr. Rentmeester created some of the most iconic images of the twentieth century, including photographs of the Los Angeles Watts Riots, the Vietnam War (where he was wounded by a sniper), the mistreatment of returning Vietnam War veterans by the Veterans Health Administration, celebrities, wildlife, and athletes.  Mr. Rentmeester has a particular talent in photographing athletes, benefiting from his own experience competing as an oarsman for the Kingdom of the Netherlands in the 1960 Olympic Games in Rome, Italy.

19.    In the summer of 1984, *LIFE Magazine* published a Special Issue previewing the 1984 Summer Olympic Games to be held in Los Angeles, California.  For that issue, Mr. Rentmeester traveled the country photographing leading United States Olympians who were preparing to compete.  *LIFE Magazine* published 13 of Mr. Rentmeester's photographs in a 22-page photo essay entitled "American Excellence."  A subject of the photo essay was Michael Jordan, who was a member of the United States Men's Basketball Team.  Mr. Jordan was also a student at the University of North Carolina ("UNC") and the 1984 NCAA College Basketball AP Player of the Year.

20.    Mr. Rentmeester, with two assistants, traveled to the UNC campus to create the Jordan Photo.  Mr. Rentmeester conceived the central creative elements of the photograph before he arrived in Chapel Hill, North Carolina.  Mr. Rentmeester wanted to maximize visual attention on an isolated figure of Mr. Jordan, and so the photograph needed to be taken outside, with a

background of sky rather than the interior of an auditorium.  Mr. Jordan would be depicted in a way to express his tremendous athletic ability: he would leap through the sky and appear to soar elegantly.  Mr. Rentmeester created the pose, inspired by a ballet technique known as a "grand jeté," a long horizontal jump during which a dancer performs splits in mid-air.  The pose, while conceived to make it appear that Mr. Jordan was in the process of a dunk, was not reflective of Mr. Jordan's natural jump or his dunking style.  Mr. Rentmeester further planned that Mr. Jordan would leap with his left leg forward and his right leg behind, and his left hand extended while holding the basketball, so that the basketball would appear to be perched on top of his fingertips, his body open and facing the camera, his limbs extended outward, and his right hand open, showing his fingers.

21.    When Mr. Rentmeester and his assistants arrived at the UNC campus, Mr. Rentmeester first met with UNC staff, who informed Mr. Rentmeester that Mr. Jordan would only be available for twenty minutes.  Mr. Rentmeester negotiated with UNC staff regarding the location of the photo shoot, insisting that it take place outside of an auditorium, at a remote location.  UNC staff agreed to allow Mr. Rentmeester to set up at a location on campus: a relatively isolated knoll with little visual distraction.

22.    Mr. Rentmeester arrived at the location, examined it, and planned the photo shoot meticulously.  He directed his assistants to purchase a basketball hoop, backboard, and pole, and told them where to dig a hole for the pole and how to position the hoop.

23.    To further minimize visual distractions, Mr. Rentmeester asked his assistants to borrow a lawn mower from the UNC groundskeeping staff.  They mowed the grass as low as possible to maximize attention on Mr. Jordan's soaring figure.

COMPLAINT

24.    Mr. Rentmeester then took several practice photographs with his assistant standing in for Mr. Jordan.  Using a Polaroid camera, Mr. Rentmeester created and developed photographs on location so that he could show them to Mr. Jordan.

25.    Once Mr. Jordan arrived, Mr. Rentmeester used the Polaroid photographs to show Mr. Jordan the desired pose.  Over approximately one half hour, Mr. Jordan practiced leaping according to Mr. Rentmeester's instructions.  The pose differed substantially from Mr. Jordan's natural jumps, during gameplay or otherwise (for instance, Mr. Jordan typically held the basketball with his right hand), and required practice and repeated attempts.  Mr. Jordan was enthusiastic and a quick study.  Mr. Rentmeester photographed Jordan at the apex of his "grand jeté" leaps, using a Hasselblad camera with 6x6cm film, with powerful strobe lights that required specialty outdoor electricity generators to power.  The large strobe lights allowed Mr. Rentmeester to photograph Mr. Jordan with the sun shining directly into the lens, creating a sharp and compelling silhouette of Mr. Jordan against a contrasting clear sky.

26.    Mr. Rentmeester returned to New York City.  When he viewed the developed film, he knew immediately that he had accomplished what he set out to create:



COMPLAINT

27.     *LIFE Magazine* published the Jordan Photo in a full two-page spread (at pages 58-59), as part of Mr. Rentmeester's photo essay of United States Olympic athletes.

28.     Since he created the Jordan Photo in 1984, Mr. Rentmeester has been the continuous and exclusive owner of the copyright in it.

29.     Mr. Rentmeester registered the Jordan Photo with the United States Copyright Office on December 18, 2014, Registration Number VA0001937374.

**B.     <u>Nike Obtained Access to the Jordan Photo</u>**

30.     At approximately the same time as *LIFE Magazine* published the Jordan Photo, Nike was in discussions with Mr. Jordan regarding an endorsement contract.

31.     After LIFE Magazine published the Jordan Photo, Nike sought to obtain a copy of it.  On information and belief, Nike sought the Jordan Photo exactly because of its distinctive and original elements, and because of the themes it so brilliantly evokes, such as flight, athleticism, and elegance.  While there was certainly no shortage of photographs of Michael Jordan, none were like the Jordan Photo.

32.     On August 22, 1984, Mr. Rentmeester allowed Nike to make temporary and limited use of two 35mm color transparencies of the Jordan Photo, for which Nike paid Mr. Rentmeester $150.  Attached as **Exhibit A** is a copy of the August 22, 1984 invoice to Nike for the Jordan Photo ("1984 Jordan Photo Invoice").  The 1984 Jordan Photo Invoice explains that the Jordan Photo was to be used "for slide presentation only, no layouts or any other duplication."  The reference to "slide presentation only" meant that the photograph could only be used by Nike in its internal presentations.  In addition, Nike had to return the transparencies to Mr. Rentmeester, which Nike later did.  Failure to return the transparencies to Mr. Rentmeester in good condition would have resulted in an additional charge of $500 ("Lost or damages [sic] @ $500").

33.     The 1984 Jordan Photo Invoice was addressed to Peter Moore, Nike's creative

director.  Moore is credited with designing the Air Jordan line of athletic shoes.

**C.     <u>Nike Unlawfully Copied the Jordan Photo</u>**

34.     Between August 1984 and February 1985, Nike copied the Jordan Photo,

reproducing its original copyrighted elements (the "Nike Copy").  By making the Nike Copy,

Nike willfully exceeded the scope of use specified in the 1984 Jordan Photo Invoice without Mr.

Rentmeester's permission.



35.     The Nike Copy reproduces several original elements of the Jordan Photo.  The

Nike Copy, like the Jordan Photo, depicts Mr. Jordan's body as a silhouette soaring against a

background of clear sky.  The Nike Copy replicates Mr. Jordan's leaping pose from the Jordan

Photo, with Mr. Jordan's legs spread, his left leg forward and his right leg behind.  The Nike

Copy also shows Mr. Jordan's left hand extended towards the basketball hoop on the right-hand

side of the photograph, holding the basketball directly above his arm so that the basketball

appears to perch on top of his fingertips.  Again, Mr. Jordan's right hand is open, his fingers

COMPLAINT

extended.  The perspective of the camera vis-à-vis Mr. Jordan is also nearly identical to the Jordan Photo.

36.    Beginning no later than 1985, Nike reproduced the Nike Copy in advertisements for Nike's Air Jordan shoes, and displayed the Nike Copy on billboards after the Chicago Bulls signed Mr. Jordan to a professional basketball player contract.

37.    Upon learning of the Nike Copy, Mr. Rentmeester contacted Nike to discuss Nike's copying of the Jordan Photo in breach of the terms of use specified in the 1984 Jordan Photo Invoice.

38.    Nike initially refused to speak with Mr. Rentmeester regarding the issue, and only responded to his repeated requests when Mr. Rentmeester threatened litigation.  Mr. Rentmeester and Nike negotiated a limited and temporary use of the Nike Copy.  Nike paid Mr. Rentmeester $15,000 for a limited license to use the Nike Copy for a period of two years.  The invoice, dated March 27, 1985 ("1985 Jordan Photo Invoice"), reflected the following limited license: "Usage of image 'Michael Jordan' Poster and Billboard, 2 years – North America only (all other usage rights are reserved)."  The 1985 Jordan Photo Invoice, attached as **Exhibit B**, was addressed to Peter Kolsky, Nike's manager of graphics, space planning, video, and trade shows.

39.    Nike willfully exceeded the scope of the 1985 Jordan Photo Invoice by using the Nike Copy on billboards, posters, and other promotional materials well beyond the two year limit.  Furthermore, Nike exceeded the scope of the 1985 Jordan Photo Invoice by using the Nike Copy as the hang tag attached to Air Jordan shoes, beginning in or around 1987.

### D.    Nike Again Unlawfully Copied the Jordan Photo with the Jumpman Logo and other Infringing Works

40.    Nike also willfully infringed Mr. Rentmeester's copyright of the Jordan Photo through use of the "Jumpman Logo," beginning in 1987:

COMPLAINT



41.     The small changes Nike made to the Jordan Photo that resulted in the Jumpman Logo were neither original nor creative.  The silhouette of Mr. Jordan in the Jordan Photo is nearly identical to the silhouette of Mr. Jordan in the Jumpman Logo, as demonstrated by the following side-by-side comparison (Jordan Photo on the left, Jumpman Logo on the right):



42.     The Jumpman Logo adds nothing to the distinctive elements and themes of the Jordan Photo.  It is a nearly identical silhouette, of the same person, in the same pose, photographed from the same perspective, holding a basketball in the same way, and evoking the same themes.

COMPLAINT

43.    Mr. Jordan's pose in the Jumpman Logo is not Mr. Jordan's natural shooting posture, but is instead the pose Mr. Rentmeester conceived and directed that day at the UNC campus.  As Mr. Jordan confirmed to *Hoop Magazine* in 1997 (emphasis added):

> It's like my logo.  I wasn't even dunking on that one.  People think that I was.  I just stood on the floor, jumped up and spread my legs and they took the picture.  I wasn't even running.  Everyone thought I did that by running and taking off.  ***Actually, it was a ballet move where I jumped up and spread my legs.  And I was holding the ball in my left hand.***

44.    The Air Jordan III athletic shoe, released in 1987, was the first generation Air Jordan shoe to display the Jumpman Logo.  The previous generations of the Air Jordan shoe displayed Nike's Air Jordan Wings logo (Trademark Registration Nos. 3,725,535 and 1,370,282):



45.    The Air Jordan III shoe containing the Jumpman Logo was far more commercially successful than previous generations.  According to its filings with the U.S. Securities and Exchange Commission, Nike's revenues doubled, from $877 million to $1.7 billion, between 1987 and 1989, based in large part on the success of the Air Jordan III

46.    An industry commentator explained:

> Jordan's Jumpman logo is one of the most recognized marks in the athletic footwear industry.  But what is the full story behind the logo?  Sure, many sneakerheads know that it first was used on the tongue of the Air Jordan 3, but where did the inspiration come from . . . ?  Long story short, it happened even before Mike laced up in Nikes.

COMPLAINT

> Following his outstanding college career, Michael Jordan played
> for one more team before joining the Chicago Bulls – Team USA
> for the 1984 Olympic Games. ***It was in preparations for the
> Games that Michael Jordan did a photoshoot while wearing
> Converse that he was first photographed doing what would later
> be known as the Jumpman pose which was done for LIFE
> Magazine preceding the Olympics.***

Matt Halfhill, History of the Air Jordan Jumpman Logo,

http://www.nicekicks.com/2014/10/01/history-behind-jordan-jumpman-logo/ (last visited Jan.

19, 2015).

47.    Since 1987, Nike continuously reproduced the Jumpman Logo on an enormous

scale.  Without permission from Mr. Rentmeester, Nike reproduced the Jumpman Logo in

advertisements, marketing materials, product packaging, and as the central visual element of a

wide variety of Nike products (the "Infringing Works").  In addition to Nike's Air Jordan shoes

that featured the Jumpman Logo prominently, the Jumpman Logo appeared on other apparel,

including t-shirts, jackets, sweatshirts, shorts, pants, hats, gloves, socks, and scarves, as well as

Jordan-related products and gear, such as basketballs, bags, headbands, and wristbands.

Examples of Nike's many Infringing Works are attached as **Exhibit C**.

48.    In 1997, Nike established the Brand Jordan Division, which is the business unit

responsible for Nike's Michael Jordan-related products.  The Jumpman Logo is associated with

the Brand Jordan Division and is used in advertisements for Brand Jordan products.  The Brand

Jordan Division designs, distributes, and licenses athletic and casual footwear, apparel, and

accessories using the Jumpman Logo.

49.    Brand Jordan, using the Jumpman Logo, has generated substantial revenues for

Nike from 1987 to the present.  In its July 2014 Form 10-K, Nike reported total revenue for its

fiscal year 2013 of $27.8 billion.  In the same filing, Nike reported that its Nike Brand footwear

COMPLAINT

revenues had increased 12% between 2013 and 2014, and credited the growth of Nike footwear to "increased demand for performance products, including NIKE and Brand Jordan Basketball styles . . . ."  Nike's Basketball Division, of which Brand Jordan is a large part, recorded revenues of $3.2 billion in 2014, increasing from $2.63 billion in 2013 and $2.17 billion in 2012. Based in part on the success of the infringing Jumpman Logo, Nike has become one of the largest shoe and sports apparel providers in the world.

50.    While Nike made billions willfully infringing Mr. Rentmeester's copyright, Nike used the trademark laws to exclude others from using similar images.  Nike owns the following three U.S. Trademark Registrations (all of which infringe Mr. Rentmeester's copyright in the Jordan Photo):

(1)    RN 1,558,100 (registered in 1989):



(2)    RN 1,742,019 (registered in 1992):



COMPLAINT

(3)    RN 3,428,287 (registered in 2008):



51.    Nike has used these Trademark Registrations to discourage rivals from using similar images, to oppose rival Trademark Registration applications, and to seek to cancel rival Trademark Registrations.

**E.    Nike Encouraged, Directed, and Profited from Others' Infringement of the Jordan Photo**

52.    In addition to Nike's direct infringement, Nike vicariously infringed the copyright in the Jordan Photo, and contributed to direct infringement by others.

53.    Nike sells Infringing Works directly to consumers through Nike-owned retail stores and internet websites, as well as through a mix of independent distributors and licensees throughout the world ("Independent Infringers").  Nike carefully supervises and controls reproduction and distribution of Infringing Works through and by these Independent Infringers. A large number of Independent Infringers sell products featuring the Jumpman Logo, use Infringing Works in advertising and marketing materials, and otherwise use and reproduce Infringing Works.

54.    For instance, retail sports apparel stores throughout the world commonly reproduce and display Infringing Works, including in-store signage that increase customer traffic and drive purchasing decisions.  Sports apparel and other companies also feature Infringing Works on their websites for similar commercial purposes.  These Independent Infringers include, for example, retail sports apparel companies Foot Locker, Inc., and Finish Line, Inc. *See*, *e.g.*,

Rebecca Greenfield (photograph), http://fivethirtyeight.com/features/you-see-sneakers-these-guys-see-hundreds-of-millions-in-resale-profit/ (last visited Jan. 20, 2015) (photo of a Foot Locker storefront in Harlem, New York, on September 13, 2014, in which a large isolated Jumpman Logo dominated the front window).

55.     On information and belief, Nike falsely represented to Independent Infringers that Nike had the legal ability to license and otherwise permit and direct reproductions and uses of Infringing Works.  On information and belief, Nike entered into contractual relationships with Independent Infringers whereby Nike purported to permit reproduction and use of Infringing Works in exchange for valuable consideration.  The Independent Infringers thereafter engaged in substantial and continuous direct infringement of Mr. Rentmeester's copyright in the Jordan Photo.

56.     Nike knew, directed, and intentionally induced and materially contributed to these infringing activities.  On information and belief, Nike profited directly from these infringing activities.  On information and belief, Nike purported to retain the right and ability to supervise and control the infringing activities, yet Nike did nothing to stop the infringement from taking place.  To the contrary, Nike intentionally induced, encouraged, and materially contributed to it.

57.     In fact, Nike enforces its U.S. Trademark Registrations aggressively to ensure that Independent Infringers have no choice but to obtain Nike's permission before engaging in direct infringement of Mr. Rentmeester's copyright in the Jordan Photo.  In its trademark infringement actions against Independent Infringers who operate outside of Nike's oversight and permission, Nike represents that the Jumpman Logo is "inherently distinctive and famous" and has "acquired enormous value and recognition in the United States and throughout the world."  *Nike, Inc. v. PMC International Inc., et al.*, Case No. 13-3460, Complaint, Dkt. 1 at ¶ 8 (D.N.J. June 4, 2013)

COMPLAINT

(complaint for trademark infringement, among other claims, regarding in part the Jumpman

Logo).  Of course, in these actions in which Nike seeks to use the United States' intellectual

property laws for its benefit, Nike says nothing about how the Jumpman Logo infringes Mr.

Rentmeester's copyright in the Jordan Photo.

## V.    FIRST CAUSE OF ACTION – COPYRIGHT INFRINGEMENT

58.    Mr. Rentmeester incorporates herein by this reference each and every allegation

contained in each paragraph above.

59.    The foregoing acts by Nike constitute infringement of Mr. Rentmeester's

copyright of the Jordan Photo in violation of 17 U.S.C. §§ 501, *et seq*.  The Nike Copy and the

Jumpman Logo both copy original elements of the Jordan Photo.  Nike had access to two 35mm

color transparencies of the Jordan Photo.  There are substantial similarities between the original

elements of the Jordan Photo and the Nike Copy, and substantial similarities between the original

elements of the Jordan Photo and Nike's Jumpman Logo.

60.    To the extent the Infringing Works are considered derivative works, Nike

reproduced them without Mr. Rentmeester's permission, and whatever minor changes or

modifications Nike made to the Jordan Photo were unoriginal, obvious, and/or simply an

application of the Jordan Photo's original copyrighted elements.

61.    Nike infringed Mr. Rentmeester's copyright willfully, in violation of the limited

use allowed by the 1984 Jordan Photo Invoice and the 1985 Jordan Photo Invoice.

62.    With full knowledge of Mr. Rentmeester's ownership and rights, Nike infringed

Mr. Rentmeester's copyright for years and continues to infringe.

63.    Mr. Rentmeester has suffered damages as a result of Nike's infringement of the

Jordan Photo.  Nike has used the Infringing Works to generate billions of dollars in profits

without compensating Mr. Rentmeester.

COMPLAINT

## VI.    SECOND CAUSE OF ACTION – VICARIOUS COPYRIGHT INFRINGEMENT

64.    Mr. Rentmeester incorporates herein by this reference each and every allegation contained in each paragraph above.

65.    The foregoing acts by Nike constitute willful vicarious infringement of Mr. Rentmeester's copyright of the Jordan Photo in violation of 17 U.S.C. §§ 501, *et seq.*

66.    Independent Infringers directly infringed Mr. Rentmeester's copyright in the Jordan Photo through reproduction and use of Infringing Works.

67.    Nike profited directly from the infringing activities of the Independent Infringers.

68.    Nike had the purported right and ability to supervise and control the infringing activities of the Independent Infringers, but Nike failed to exercise that purported right and ability to end the infringing activities.

69.    Mr. Rentmeester has suffered damages as a result of the infringing activities of the Independent Infringers.  Nike has benefited and profited from these infringing activities without compensating Mr. Rentmeester or obtaining his permission.

## VII.    THIRD CAUSE OF ACTION – CONTRIBUTORY COPYRIGHT INFRINGEMENT

70.    Mr. Rentmeester incorporates herein by this reference each and every allegation contained in each paragraph above.

71.    The foregoing acts by Nike constitute willful contributory infringement of Mr. Rentmeester's copyright of the Jordan Photo in violation of 17 U.S.C. §§ 501, *et seq.*

72.    Independent Infringers directly infringed Mr. Rentmeester's copyright in the Jordan Photo through reproduction and use of Infringing Works.

73.    Nike knew and had reason to know of the infringing activities of the Independent Infringers.

COMPLAINT

74.    Nike intentionally induced and materially contributed to the Independent Infringers' infringing activities.

75.    Mr. Rentmeester has suffered damages as a result of the infringing activities of the Independent Infringers.  Nike has benefited and profited from these infringing activities without compensating Mr. Rentmeester or obtaining his permission.

## VIII.    FOURTH CAUSE OF ACTION – VIOLATIONS OF THE DIGITAL MILLENNIUM COPYRIGHT ACT

76.    Mr. Rentmeester incorporates herein by this reference each and every allegation contained in each paragraph above.

77.    Several forms of "copyright management information," as defined in 17 U.S.C. § 1202(c), were conveyed in connection with authorized copies of the Jordan Photo.  This "copyright management information" included: "information identifying the work"; the "name of, and other identifying information about, the author of [the] work"; the "name of, and other identifying information about, the copyright owner of the work, including the information set forth in [the] notice of copyright"; and "[t]erms and conditions for use of the work."  17 U.S.C. § 1202(c)(1)-(3), (6).

78.    Without permission from Mr. Rentmeester, Nike intentionally removed and/or altered, and caused and induced others to remove and/or alter, copyright management information from copies and unauthorized derivative versions of the Jordan Photo, including for use in the Infringing Works; distributed and imported for distribution, and caused and induced others to distribute and import for distribution, copyright management information conveyed in connection with Infringing Works, knowing that the copyright management information had been removed or altered without authority of the copyright owner or the law; and distributed and imported for distribution, and caused and induced others to distribute and import for distribution,

COMPLAINT

the Infringing Works, knowing that the copyright management information had been removed or altered without authority of the copyright owner or the law, all while having reason to know and in fact knowing that doing so would induce, enable, facilitate, or conceal infringement of Mr. Rentmeester's copyright in the Jordan Photo, in violation of 17 U.S.C. § 1202(b)(1)-(3).

79.    Nike's removal or alteration of Mr. Rentmeester's copyright management information from the Jordan Photo, including for use in and distribution of the Infringing Works, was and continues to be willful and intentional.

80.    Mr. Rentmeester is entitled to his actual damages as a result of Nike's violation and any of Nike's profits attributable to the violation and not taken into account in calculating actual damages, or, at Mr. Rentmeester's election, statutory damages, pursuant to 17 U.S.C. § 1203(c).

81.    Mr. Rentmeester is entitled to his costs and attorneys' fees, pursuant to 17 U.S.C. § 1203(b)(4) and (5).

82.    Mr. Rentmeester is entitled to a temporary and permanent injunction preventing Nike from further violations, pursuant to 17 U.S.C. § 1203(b)(1).

## IX.    PRAYER FOR RELIEF

WHEREFORE, Mr. Rentmeester requests the following:

1.    That the Court find that Nike and the Independent Infringers have infringed Mr. Rentmeester's copyright in the Jordan Photo;

2.    That the Court enter judgment for Mr. Rentmeester and against Nike for Mr. Rentmeester's actual damages and any profits attributable to infringement of Mr. Rentmeester's copyright, pursuant to 17 U.S.C. § 504(b) and 17 U.S.C. § 1203(c)(2);

3.    That the Court enter judgment for Mr. Rentmeester and against Nike for statutory damages, pursuant to 17 U.S.C. § 504(c) and 17 U.S.C. § 1203(c)(3)(B);

- 20 -

4.      That the Court find that Nike and the Independent Infringers cannot assert copyright protection in any of the Infringing Works;

5.      An award of Mr. Rentmeester's full costs and reasonable attorneys' fees, pursuant to 17 U.S.C. § 505 and 17 U.S.C. § 1203(b)(4) and (5);

6.      A temporary and permanent injunction preventing Nike and anyone working in concert with Nike from copying, displaying, distributing, selling, or offering to sell the Infringing Works, pursuant to 17 U.S.C. § 502 and 17 U.S.C. § 1203(b)(1);

7.      Impoundment, on just and reasonable terms, of the Infringing Works, all "plates, molds, matrices, masters, tapes, film negatives, or other articles by means of which such copies … may be reproduced," and all "records documenting the manufacture, sale, or receipt of things involved in [the] violation[s]" of Mr. Rentmeester's copyright in the Jordan Photo, pursuant to 17 U.S.C. § 503 and 17 U.S.C. § 1203(b)(2);

8.      That Nike be required to notify the Independent Infringers and any current or future owners of Infringing Works that the Infringing Works were not lawfully made under the Copyright Act, and that the Infringing Works cannot lawfully be displayed under 17 U.S.C. § 109(c);

9.      An award of punitive damages; and

10.     Such other and further relief as the Court deems just and proper.

## X.    DEMAND FOR JURY TRIAL

Mr. Rentmeester demands a trial by jury of all issues so triable.

- 21 -

Dated:  January 22, 2015    By:_____/s/ Cody Hoesly_____
                                            Cody Hoesly

Cody Hoesly (OSB No. 052860)
LARKINS VACURA LLP
121 SW Morrison Street, Suite 700
Portland, Oregon  97204
Telephone:  (503) 222-4424
Facsimile:  (503) 827-7600

Eric B. Fastiff (admission *Pro Hac Vice* anticipated)
Dean M. Harvey (admission *Pro Hac Vice* anticipated)
Katherine C. Lubin (admission *Pro Hac Vice* anticipated)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, California  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

*Attorneys for Plaintiff Jacobus Rentmeester*

COMPLAINT

1214736.1