IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**JACOBUS RENTMEESTER**,

        Plaintiff,

        v.

**NIKE, INC.,** an Oregon corporation,

        Defendant.

No. 3:15-cv-00113-MO

OPINION AND ORDER

**MOSMAN, J.**,

On March 16, 2015, Defendant Nike, Inc. ("Nike") filed a Motion to Dismiss [25] relating to all of Plaintiff Jacobus Rentmeester's claims. Mr. Rentmeester's Complaint [1] alleges claims of copyright infringement, vicarious copyright infringement, and contributory copyright infringement, as well as a violation of the Digital Millennium Copyright Act ("DMCA"). For the reasons discussed below, Nike's Motion to Dismiss [25] is GRANTED.

## BACKGROUND

As part of a series of photographs for a 1984 issue of *LIFE Magazine*, Mr. Rentmeester planned and executed a photo shoot with then North Carolina student Michael Jordan. Mr. Rentmeester set out to create a unique and creative picture of Mr. Jordan. Instead of taking a

1 – OPINION AND ORDER

traditional picture of Mr. Jordan in a traditional setting (i.e. a conventional basketball shot in a gym), Mr. Rentmeester photographed Mr. Jordan outdoors in an untraditional pose.

Mr. Rentmeester took the photo ("Rentmeester Photo") on a relatively isolated grassy hill with no visual distractions other than the setting sun and a basketball hoop he had temporarily installed on the hill. For the pose, Mr. Rentmeester instructed Mr. Jordan to jump straight up and perform a grand jeté, a ballet leap, while holding a basketball. Mr. Rentmeester claims he was the first person ever to photograph Mr. Jordan, or any other basketball player, in this specific pose. Mr. Rentmeester believed that a photograph "with Mr. Jordan extending his non-shooting left arm straight and forward, triumphantly holding a basketball (as the tip of a crown holds a jewel), and framing the shot with Mr. Jordan appearing to glide away from the earth and toward a basketball hoop . . . would be powerful, compelling, and unique." Pl.'s Response [38] at 23. Mr. Rentmeester argues that the creative genius of the pose, and the overall construction of the image, is to trick the viewer into thinking that Mr. Jordan is actually performing a dunk when in fact he is not. In order to accomplish his creative goals, Mr. Rentmeester positioned his camera at an approximate 90-degree angle to the apparent trajectory of Mr. Jordan's leap and slightly below Mr. Jordan, creating a perspective for the viewer of looking up at Mr. Jordan's fully-extended body. Mr. Rentmeester captured the precise detail of Mr. Jordan's jump with a combination of a very rapid shutter speed and powerful synchronized strobe lights.



2 – OPINION AND ORDER

*LIFE Magazine* published the Rentmeester Photo in a special Olympic preview issue at approximately the same time that Nike was preparing to launch its endorsement relationship with Mr. Jordan. Nike contacted Mr. Rentmeester to request color transparencies of the Rentmeester Photo. Mr. Rentmeester agreed to lend the transparencies to Nike in exchange for $150, with the following strict limitation: "for slide presentation only, no layout or any other duplication." Compl. [1] at ¶ 32, Ex. A. Within seven months of receiving Mr. Rentmeester's color transparencies, Nike created a similar photograph ("Nike Photo") and displayed it on billboards and posters.



Upon learning of the Nike Photo, Mr. Rentmeester contacted Nike to discuss its copying of the Rentmeester Photo in breach of the terms of use in the 1984 Jordan Photo Invoice. Mr. Rentmeester and Nike negotiated a limited and temporary use of the Nike Photo. Nike paid Mr. Rentmeester $15,000 for a limited license to use the Nike Photo for a period of two years. After the expiration of the two-year license, Nike continued to use the Nike Photo on a wide variety of billboards, advertisements, and merchandise. Beginning in 1987, Nike began using the Jumpman Logo on all of its Jordan Brand merchandise.



3 – OPINION AND ORDER

**DISCUSSION**

**I.    The Proper Legal Standard**

It is undisputed that in order to state a claim for infringement, Mr. Rentmeester must allege (1) ownership of a valid copyright; and (2) unauthorized copying of protectable material. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991). For unauthorized copying, Mr. Rentmeester must allege facts that demonstrate that Nike had access to his work and that the works at issue are substantially similar. *Olson v. Tenney*, 466 F. Supp. 2d 1230, 1235 (D. Or. 2006) (citing *Litchfield v. Spielberg*, 736 F.2d 1352 (9th Cir. 1984)). In order to establish substantial similarity in the Ninth Circuit, a plaintiff must demonstrate that the allegedly infringing work is both objectively similar (the "extrinsic test") and subjectively similar (the "intrinsic test") to the copyrighted work. *Sid & Marty Kroft Tel. Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1164 (9th Cir. 1977) *superseded in part on other grounds by* 17 U.S.C. § 504(b). Whether there is sufficient objective similarity under the extrinsic test is a question that may be decided by the court as a matter of law on a motion to dismiss by viewing the works. *See, e.g., Christianson v. West Pub. Co.*, 149 F.2d 202, 203 (9th Cir. 1945).

The most difficult part of this case is determining how similar the works must be to qualify as substantially similar. The Ninth Circuit appears to use a sliding scale to define substantial similarity. In other words, what qualifies as substantially similar varies from case to case depending on the underlying facts. In *Mattel, Inc. v. MGA Entertainment, Inc.*, the Ninth Circuit held:

> If there's a wide range of expression (for example, there are gazillions of ways to make an aliens-attack movie), the copyright protection is "broad" and a work will infringe if it's "substantially similar" to the copyrighted work. If there's only a narrow range of expression (for example, there are only so many ways to paint a red bouncy ball on blank canvas), the copyright protection is "thin" and a work must be virtually identical to infringe.

616 F.3d 904, 913–14 (9th Cir. 2010). Therefore the key inquiry in this case is to determine whether the Rentmeester Photo involves a wide or narrow range of expression.

Nike argues the Ninth Circuit applies the virtually identical, or thin protection, version of the substantial similarity standard in all cases involving photographs. Put in the language found in *Mattel*, Nike essentially argues that photographs *per se* only involve a narrow range of expression. The weakness in this position is that Nike fails to explain why this would be true of all photographs (i.e. why photographs necessarily involve only a narrow range of expression). Nike's counsel could not explain at oral argument why photographs would be treated differently, but nevertheless argued that this is how the Ninth Circuit treats photograph cases and so this court should fall in line and apply the virtually identical standard. In other words, Nike's counsel urged this court to "Just Do It."

A careful examination of *Mattel* suggests why the Ninth Circuit has previously applied the virtually identical standard to cases involving photographs. Under *Mattel*, a court must first determine the breadth of copyright protection over a specific copyrighted work. In order to do this, a court must decide what idea is being expressed by the artist in the copyrighted work. Ideas—even very creative ideas—are not granted copyright protection.17 U.S.C. §102(b); *see also Mattel*, 616 F.3d at 917. Rather, it is the expression of the idea that is protected. The breadth of protection afforded to a particular expression is determined by the number of possible expressions of the idea. If the idea can only be expressed in a small number of ways, the copyrighted work receives thin protection; only works that are virtually identical will infringe on the artist's copyright. If the idea can only be expressed in a few ways, it becomes more difficult for artists to express the idea without some overlapping similarities. Only thin protection is afforded to an expression of such an idea to avoid giving the first artist a monopoly over the idea.

If the idea is capable of being expressed in a large number of ways, the copyrighted work receives broad protection. Given the numerous alternative dissimilar expressions of the idea, increased protection over a particular expression is more likely to protect creative expression and less likely to result in granting the first artist a monopoly over the idea. Under this broad protection, works that are substantially similar to the copyrighted work will infringe on the artist's copyright.

After determining the breadth of the copyright protection, the court then must compare the similarities in the two works. "The key question always is: Are the works substantially similar beyond the fact that they depict the same idea?" *Mattel*, 616 F.3d at 917. It is important to recognize that not every similarity is treated the same. "[A] finding of substantial similarity between two works can't be based on similarities in unprotectable elements." *Id.* at 916. Therefore, in applying the extrinsic test and assessing whether the works are objectively similar, courts must consider whether each alleged similarity between the works relates to a protected or unprotected element. *Id.; see also Apple Computer*, 35 F.3d at 1443. "For example, ideas, scenes a faire (standard features) and unoriginal components aren't protectable." *Id.* at 913. Once the filtering process is complete, what is left is the artist's particular expression of an idea (i.e. the protectable portion of the work). *Id.* at 913. The two works are then compared to see if they are substantially similar or virtually identical, depending on the range of expression at issue.

Turning to the photograph cases cited by Nike, each of those cases involves a photograph with a limited range of expression. This led the respective courts, some explicitly and others implicitly, to determine there was only a thin range of expression and therefore only virtually identical copies of the copyrighted work would be found to be infringing. *Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 766 (9th Cir. 2003); *Muromura v. Rubin Postaer and Assoc.*, 2014

WL 4627099, at *3 (C.D. Cal Sept. 16, 2014); *Masterson Mktg., Inc. v. KSL Recreation Corp.*, 495 F.Supp.2d 1044, 1049 (S.D. Cal 2007); *Reece v. Island Treasures Art Gallery, Inc.*, 468 F.Supp.2d 1197, 1205 (D. Haw. 2006). After engaging in the prescribed filtering process, the various courts determined the photographs at issue in each case had very few protectable elements. *Ets-Hokin*, 323 F.3d at 766; *Muromura*, 2014 WL 4627099, at *3; *Masterson*, 495 F.Supp.2d at 1049; *Reece*, 468 F.Supp.2d at 1204–1208. Because the photographs at issue had narrow ranges of expression and lacked protectable similarities, the various courts found that no copyright infringement had occurred. Far from announcing a special rule for photographs, these cases merely apply the standard set out in *Mattel*.

## II.     Applying the *Mattel* Test

### A.     Defining the Idea

As described above, the first step in applying *Mattel* is to determine what idea was being expressed in the Rentmeester Photo. At oral argument, counsel for Mr. Rentmeester argued that, "[t]he correct formulation of the idea is one that describes the category of expression and sets out basically the task that Mr. Rentmeester was charged with." Hearing Transcript [49] at 17. I disagree with this formulation for determining the idea expressed in a work. It should not matter what the commissioner of the work asked for; if that were so, broad copyright protection could be created out of thin air with vague descriptions of the commissioned task. What matters is what idea the creator of the work was trying to express when she created the copyrighted work. I agree with Nike's position at oral argument that the complaint makes clear that the idea Mr. Rentmeester tried to express in his photograph was that of, "Michael Jordan in a gravity-defying dunk, in a pose inspired by ballet's grand-jeté." *Id.* at 25; see also Pl.'s Compl. [1] at

¶20. This is the idea that matters and therefore the one that will be used for the subsequent steps in the *Mattel* analysis.

### B.     The Range of Expression

After defining the idea, the next step in the *Mattel* analysis is to determine the range of possible ways to express that idea in order to determine the breadth of copyright protection afforded to the Rentmeester Photo. This is a case where there are more than a few ways to express the idea, but certainly less than a gazillion. *Mattel*, 616 F.3d at 913–14. Counsel for Mr. Rentmeester correctly pointed out that this idea—Michael Jordan in the grand-jeté pose—could have been expressed from a number of different perspectives. The example counsel used was that the photograph could have been taken from behind the basketball hoop facing Mr. Jordan. Hearing Transcript [49] at 36. While this court will not quibble with the fact that there are technically an infinite number of perspectives from which this photograph could have been taken (e.g. from 90 degrees vs. 90.1 vs. 90.2, etc.), there are certainly a handful of materially different perspectives—ten to fifteen—from which this photo could have been taken. The same would apply to the lighting in the photograph; there are an infinite number of possibilities, but only a handful of materially different ones.

In *Reece*, the case cited by Nike most similar to this case, the parties agreed that the idea of a hula dancer in an 'ike pose (traditional hula pose) is only entitled to thin protection. *Reece*, 468 F.Supp.2d at 1205, 1208. The court in that case appears to have accepted that agreement without comment. Presumably though, as discussed above, that idea could be expressed in a number of ways. For example, a photographer could photograph the hula dancer from the front, the back, the side, bird's eye view, or below. The hula dancer could be 14-years-old or she could be 54-years-old. The picture could be taken at night or during the day. Without any discussion of

these various ways to express the idea of a hula dancer in an 'ike pose, the parties agreed, and the court accepted, that the idea was entitled to only thin protection.

      I am unconvinced by *Reece* that photographs of ideas involving a specific pose *always* involve such a narrow range of expression as to merit, categorically, only thin protection. In *Mattel* the court used two visual cues as examples of the two ends of a continuum: alien-attack movies, for which there is broad protection because there are so many way to express that idea; and a red bouncy ball on a blank canvas, for which there is thin protection because there are far fewer ways to express that idea. I think the idea in this case is closer to the idea of red bouncy ball on a canvas than to the very broad idea of an aliens-attack movie and therefore it receives only thin protection. *Mattel*, 616 F.3d at 913–14. Although there are a number of variations in perspective and lighting that could be used to photograph Mr. Jordan in the grand-jeté, there are relatively few materially different options. The same could be said for the red bouncy ball on a canvas. The red bouncy ball could be depicted in one of the corners, the dead center of the canvas, or somewhere in between. The ball could be painted very large or very small. It could be painted as if it sat in the dark or under the noon day sun. Despite a few materially different means of expression, according to *Mattel*, the idea of the red bouncy ball on a canvas has a sufficiently narrow range of expression such that it receives only thin protection. Given the goalposts of a gazillion ways to express an idea resulting in broad protection and a few ways resulting in thin protection, I find the idea expressed in the Rentmeester Photo to have a range of expression substantially closer to the type of idea resulting in only thin protection.

### C. The Rentmeester Photo vs. The Nike Photo: Comparing the Protected Elements for Substantial Similarity

#### 1. *Filtering Out the Unprotected Elements*

Having determined the breadth of copyright protection for the Rentmeester Photo, *Mattel* now requires that I filter out the unprotected elements of the Rentmeester Photo and that I compare the two photographs for substantial similarity. *Mattel*, 616 F.3d at 913. At oral argument, counsel for Mr. Rentmeester conceded the following as unprotected elements: the basketball hoop, the basketball, a man jumping, Mr. Jordan's skin color, and his clothing. I believe this list covers all of the material unprotected elements of the Rentmeester Photo.

#### 2. *Original Selection and Arrangement of Unprotected Elements*

These concessions came with the disclaimer that Mr. Rentmeester believes his particular arrangement of these various unprotected elements is protected. In *Cavalier v. Random House, Inc.*, the Ninth Circuit held that infringement could be based on "original selection and arrangement of unprotected elements." 297 F.3d 815, 826 (9th Cir. 2002). So the issue becomes figuring out to what extent Mr. Rentmeester's selection and arrangement of the above elements can be considered original.

I find that very little of the selection and arrangement is original. The idea in the Rentmeester Photo is, "Michael Jordan in a gravity-defying dunk, in a pose inspired by ballet's grand-jeté." Given this idea, there is nothing original about the selection and arrangement of having a Michael Jordan jump with a basketball in the vicinity of a basketball hoop—that is all *scenes a faire* for the idea at issue. The only arguably original part of Mr. Rentmeester's selection and arrangement is that the photograph was taken outside as opposed to inside a gym. However, given that a lot of basketball is played every day by would-bes, has-beens, and never-weres in driveways and outdoor courts at neighborhood parks, even this element of selection and

arrangement is not all that original. Therefore, to the extent Mr. Rentmeester seeks protection for his selection and arrangement of the various unprotected elements, I find that he is either entitled to no protection or such little protection that it has no material impact on the substantial similarity analysis.

### 3. *Treatment of the Pose*

In seeking protection for the pose, counsel for Mr. Rentmeester at various times and in various ways has tried to argue that the pose is protectable because it is a creative and unique pose that Mr. Rentmeester invented. What counsel for Mr. Rentmeester fails to recognize, however, is that whether Mr. Rentmeester's idea was or was not original has no legal significance. An idea is an unprotected element that is not considered in the substantial similarity analysis. *Mattel*, 616 F.3d at 917. The law draws no distinction between original and unoriginal ideas; it clearly states, "In no case does copyright protection . . . extend to *any* idea." 17 U.S.C. §102(b) (emphasis added).

Turning to Mr. Jordan's actual pose as an expression of the idea to use the grand-jeté, it would be entitled to protection and any substantial similarities between it and Mr. Jordan's pose in the Nike Photo could result in a finding of infringement. Although at first glance there are certainly similarities between the two expressions of the pose, a closer examination reveals several material differences. In the Rentmeester Photo, Mr. Jordan's right arm is bent at the elbow. In the Nike Photo, Mr. Jordan's right arm is extending straight down and away from the basket. With regards to his left arm, in the Rentmeester Photo Mr. Jordan's arm is bent slightly backwards while in the Nike Photo it is fully extended and is depicted above the basket. The positioning of Mr. Jordan's legs also appears differently in these photographs. In the Rentmeester Photo, Mr. Jordan's legs are positioned in the stance of someone jumping while

running forward (i.e. a traditional grand- jeté). His legs are apart like a scissor split, nearly creating a straight line. In contrast, in the Nike Photo, Mr. Jordan's legs are positioned in the stance of someone who has jumped up vertically and spread his legs wide in a straddle position, creating a "V" as opposed to a straight line. In the context of thin or very close to thin copyright protection, these differences lead me to find that the poses are not substantially similar because they are not virtually identical.

### 4. *No Substantial Similarity*

Given the analysis above, I find no substantial similarity between the Rentmeester Photo and the Nike Photo. Once the filtering process is complete, you are left with one of two things: (1) two photographs taken at a similar angle, one of a grassy hill with a blue sky background and a setting sun, and the other of the skyline of Chicago with a red and purple sky background; or (2) everything described in (1) with the addition of Mr. Jordan in a grand- jeté pose in each photograph.

If the filtering process results in (1), it is obvious that the two photographs are not substantially similar; in fact it would be a stretch of the imagination to call them similar at all. Other than the similar perspective, there are few if any similarities.

If the filtering process results in (2), the analysis would not change because all you have done is add an element to each photograph that, for the reasons stated above, is not substantially similar. The following differences would also come into play if you added in Mr. Jordan as an element to be considered: (1) the scale and placement of Mr. Jordan is different: in the Rentmeester Photo he is relatively small and to the left of the frame and farther from the basket, and in the Nike Photo he is relatively large and in the center of the frame and closer to the basket; and (2) the treatment of the ground: in the Rentmeester Photo you can clearly see the hill

where Mr. Jordan jumped from, and in the Nike Photo there is no depiction of where he jumped from, but rather he appears as though he is flying over the skyline of Chicago. Similar to the court in *Reece*, I believe these many differences are sufficient to overcome the one similarity that Mr. Rentmeester has to hang on to—the fact that the photographers were taken from similar angles. *Reece*, 468 F.Supp.2d at 1207. Given the lack of substantial similarity between the photographs at issue, Mr. Rentmeester cannot satisfy the objective test for copyright infringement. Mr. Rentmeester's claims regarding the Nike Photo are therefore dismissed with prejudice.

### D.  The Rentmeester Photo vs. The Jumpman Logo: Comparing the Protected Elements for Substantial Similarity

For many of the reasons stated above, I find that there is no substantial similarity between the Rentmeester Photo and the Jumpman Logo. The idea embodied is again, "Michael Jordan in a gravity-defying dunk, in a pose inspired by ballet's grand-jeté." The only similarity between the Rentmeester Photo and the Jumpman Logo is the pose—the Jumpman Logo is nothing more than an expression of the pose. For the reasons stated above, the two poses are not substantially similar and therefore the two works are not substantially similar. Mr. Rentmeester has shot another brick and failed to meet the objective test for copyright infringement. Mr. Rentmeester's claims regarding the Jumpman Logo are therefore dismissed with prejudice.

### III.  Application of the DMCA

Mr. Rentmeester cannot state a claim under the DMCA without an underlying act of infringement. Section 1202(a) only prohibits the provision of copyright management information that is false. Since the Nike Photo and Jumpman Logo are non-infringing works for the reasons stated above, Nike cannot be faulted for claiming copyright protection over those works. Mr. Rentmeester's DMCA claim is therefore also dismissed with prejudice.

## CONCLUSION

Based on the briefing and oral argument, Mr. Rentmeester has failed to show that he can satisfy the requisite objective test for copyright infringement. Therefore, Nike's Motion to Dismiss [25] is GRANTED. Mr. Rentmeester's Complaint [1] is dismissed with prejudice.

IT IS SO ORDERED.

DATED this __15th__ day of June, 2015.

/s/ Michael W. Mosman____
MICHAEL W. MOSMAN
United States District Judge